UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF MISSOURI
EASTERN DIVISION

DAVID E. HINCH,                    )
                                   )
            Plaintiff,             )
                                   )
      v.                           )     No. 4:12CV419 FRB
                                   )
CAROLYN W. COLVIN, Acting          )
Commissioner of Social Security,[1] )
                                   )
            Defendant.             )


**MEMORANDUM AND ORDER**

        This cause is before the Court on plaintiff's appeal of
an adverse decision by the Social Security Administration.   All
matters are pending before the undersigned United States Magistrate
Judge, with consent of the parties, pursuant to 28 U.S.C. § 636(c).

**I.  Procedural History**

        On April 2, 2007, plaintiff David E. Hinch filed an
application for Disability Insurance Benefits pursuant to Title II
of the Social Security Act, 42 U.S.C. §§ 401, et seq., and an
application for Supplemental Security Income (SSI) pursuant to
Title XVI of the Act, 42 U.S.C. §§ 1381, et seq., in which he
claimed he became disabled on February 26, 2006.   On initial
consideration, the Social Security Administration denied
plaintiff's claims for benefits.  (Tr. 107, 108.)  On March 26,

_____

        [1]On February 14, 2013, Carolyn W. Colvin became the Acting
Commissioner of Social Security.  Pursuant to Fed. R. Civ. P.
25(d), Carolyn W. Colvin is therefore automatically substituted
for former Commissioner Michael J. Astrue as defendant in this
cause of action.

2009, after a hearing before an Administrative Law Judge (ALJ) at which plaintiff and a vocational expert testified, plaintiff was awarded benefits with a finding that he had been under a disability since April 2, 2007. (Tr. 113-25.) On August 12, 2009, the Appeals Council remanded the matter back to the ALJ with instruction to obtain additional evidence concerning plaintiff's impairments, to obtain evidence from a medical expert regarding plaintiff's mental impairments and resolve inconsistencies in the evidence involving such impairments, to give further consideration to plaintiff's maximum residual functional capacity (RFC) and provide reasons and reference to the record regarding plaintiff's assessed limitations, to obtain supplemental evidence from a vocational expert, and to determine whether alcoholism was a contributing factor material to any finding of disability. (Tr. 126-29.)

Upon remand, an additional hearing was held before the ALJ on October 21, 2009, at which plaintiff and vocational and medical experts testified. (Tr. 27-68.) On May 12, 2010, the ALJ entered a decision denying plaintiff's claims for benefits, finding that if plaintiff ceased his substance abuse, he would have the RFC to perform other work as it exists in significant numbers in the national economy. (Tr. 7-22.) On January 3, 2012, the Appeals Council denied plaintiff's request for review of the ALJ's decision. (Tr. 1-6.) The ALJ's decision is thus the final

decision of the Commissioner.  42 U.S.C. § 405(g).

In the instant appeal for judicial review, plaintiff claims that the Commissioner's final decision is not supported by substantial evidence on the record as a whole.  Specifically, plaintiff contends that the ALJ erred in his RFC determination inasmuch as he failed to consider additional limitations caused by plaintiff's mental impairment, and specifically his inability to be around people.  Plaintiff also claims that the ALJ's conclusions regarding the effects of plaintiff's alleged alcohol abuse are not supported by the record.  Finally, plaintiff claims that the ALJ erred in determining his credibility inasmuch as the ALJ failed to sufficiently address the factors to be considered in assessing a claimant's credibility.  Plaintiff requests that the Commissioner's decision be reversed and that benefits be awarded, or that the matter be remanded to the Commissioner for further proceedings.

Upon consideration of plaintiff's claims and a review of the entire record, the undersigned finds there to be substantial evidence on the record as a whole to support the ALJ's decision.[2] The Commissioner's decision should therefore be affirmed.

_____

[2]Plaintiff raises no claim with respect to the ALJ's analysis and/or conclusions regarding his physical impairments, but instead challenges the ALJ's decision only as it relates to the effects of plaintiff's mental impairments and alleged substance abuse.  Although the undersigned has reviewed the record as a whole, the summary of evidence included in this Memorandum and Order contains only that evidence relevant to plaintiff's claims.

A.   Hearing Held July 7, 2008

At the hearing on July 7, 2008, plaintiff testified in response to questions posed by counsel and the ALJ.

At the time of the hearing, plaintiff was forty-one years of age.   Plaintiff is divorced and has two fifteen-year old children.   Plaintiff testified that he is homeless and sometimes stays with cousins.   Plaintiff receives food stamps and has no medical insurance.   Plaintiff graduated from high school and attended college for two years where he studied physics.  (Tr. 75-77.)

Plaintiff testified that he last worked in February 2006 as a general contractor building roads, remodeling kitchens, etc. Plaintiff testified that he was involved in an automobile accident which caused him to stay in the hospital for four or five weeks, and that he did not return to work after that time.  (Tr. 78-79.) Plaintiff testified that his motor skills have declined and that he has memory problems because of the accident.   Plaintiff testified that he cannot remember anything longer than fifteen minutes.  (Tr. 81.)

Plaintiff testified that he has a crack in his lower spine as result of the February 2006 accident and that he takes Hydroxyzine for pain.   Plaintiff testified that he also takes Hydrocodone, Pamonte, Naproxen, and Tramadol for pain.  (Tr. 89-

91.)  Plaintiff testified that his pain medications cause him to feel lethargic.  Plaintiff testified that his back pain is at a level ten on a scale of one to ten.  (Tr. 91-92.)  Plaintiff testified that he can stand, lie down, or sit for only fifteen minutes at a time because of his back pain.  (Tr. 84.)  Plaintiff testified that he has difficulty climbing stairs, bending, stooping, and crouching.  Plaintiff testified that can lift "hardly anything."  (Tr. 95.)

Plaintiff testified that he also suffers from depression, bipolar disorder, anxiety, and panic attacks and that he experiences four or five panic attacks every week.  Plaintiff testified that he has difficulty with concentration and cannot concentrate on one thing for longer than two minutes.  Plaintiff testified that he was incarcerated from October 2007 to March 2008 and that psychiatric treatment received during this period, including medication, helped his mental condition.  Plaintiff testified that he experiences crying spells without such medication.  Plaintiff also testified that he currently experiences mood swings and has problems with his temper.  Plaintiff testified that he has an upcoming appointment with a psychiatrist.  (Tr. 92-96.)

As to his daily activities, plaintiff testified that he eats breakfast in the morning.  Plaintiff testified that he likes to read and watches some television.  Plaintiff testified that he

has to reread many of his books because of his memory problems. Plaintiff testified that he cannot do chores. Plaintiff testified that he no longer cooks because he has forgotten to turn off the stove on numerous occasions. Plaintiff testified that he can do dishes but cannot do laundry, vacuum, sweep, or change sheets because the movement causes pain in his back. Plaintiff testified that he does not shop. Plaintiff testified that he is not sociable but has a couple of friends. Plaintiff testified that he has no hobbies and belongs to no clubs or organizations. (Tr. 84-87.) Plaintiff testified that his driver's license had expired and that he has not driven since his accident in February 2006. (Tr. 76.)

Plaintiff testified that he used to abuse alcohol but that he had stopped drinking the previous August. Plaintiff testified that he had used marijuana, cocaine and ecstacy while in college but that he had not used such substances since 1987. (Tr. 88-89.)

B.   Hearing Held October 21, 2009

At the hearing held on October 21, 2009, plaintiff testified in response to questions posed by the ALJ and counsel.

At the time of the hearing, plaintiff was forty-three years of age. Plaintiff lives in a two-story house with his mother. (Tr. 32.)

Plaintiff testified that he gets up in the morning between 6:30 and 7:00 a.m. and washes up, eats breakfast, and then

reads or watches television. Plaintiff testified that he makes his own breakfast. Plaintiff testified that he can cook and do laundry but that his mother usually performs such chores. Plaintiff testified that he does the dishes and can make his bed, sweep, mop, and vacuum. Plaintiff testified that he does not shop because he cannot be around people. Plaintiff testified that he no longer has friends. (Tr. 35-37.) Plaintiff testified that he leaves the house only for his doctor's appointments. (Tr. 49.)

As to his alcohol use, plaintiff testified that he has not had a drink for twenty-six months. (Tr. 39.)

Plaintiff testified that he takes Seroquel for sleep and Naproxen and Tramadol for pain. Plaintiff testified that he also takes antidepressant medication. (Tr. 41-42.) Plaintiff testified that his medication makes him lethargic and forgetful. (Tr. 44.) Plaintiff testified that he continues to have crying spells three or four times a week, and that he has panic attacks every other day. Plaintiff testified that his medication helps but only somewhat. Plaintiff testified that he began seeing a psychiatrist six or seven months prior and visits him once a month. (Tr. 45.) Plaintiff testified that he visited Hopewell Center for about a year before being referred to his psychiatrist. (Tr. 51.) Plaintiff testified that he receives electroconvulsive therapy (ECT) once a week at his doctor's direction. (Tr. 46.)

Plaintiff testified that he hears voices that tell him to

watch out for everyone and that everyone is out to get him. (Tr. 46-47.) Plaintiff testified that he has heard such voices during the previous year and a half, and heard them prior to his accident. Plaintiff testified that he continues to have poor concentration and that his memory is worsening. (Tr. 47-49.)

As to his exertional abilities, plaintiff testified that he has no problems sitting, standing or walking and that he can lift approximately twenty pounds. Plaintiff testified that he cannot bend because of back problems, but he can climb steps. (Tr. 47-48.)

### III. Relevant Medical Evidence Before the ALJ

Plaintiff was admitted to the emergency room at St. Louis University Hospital on February 26, 2006, after being involved in a motor vehicle accident. Plaintiff was in the intensive care unit until March 1, 2006. Plaintiff was noted to follow commands without complication, but plaintiff demonstrated impulsive and combative behavior. Plaintiff was discharged on March 3, 2006, to SSM rehabilitation. (Tr. 476-509.)

Upon admission to SSM on March 3, 2006, plaintiff was diagnosed with late effects of traumatic brain injury with a right subdural hemorrhage, cognitive impairment, gait abnormality, and impulsivity. Plaintiff reported that he had a history of depression and alcoholism. Plaintiff reported that he was no longer going to drink. Plaintiff's memory deficit and impulsivity

were evident. Plaintiff was discharged on March 15, 2006, in good condition with a note that he had made fast progress. Plaintiff's discharge medications were Naprosyn and Claritin D. (Tr. 510-48.)

While incarcerated, plaintiff visited Corrections Medicine on December 28, 2006, with complaints of back pain. Plaintiff also reported having problems with his memory. As to his social history, plaintiff reported that he drank twelve beers a week. Mental status examination was unremarkable. (Tr. 572-73.)

Plaintiff visited Corrections Medicine on January 24, 2007, and reported that he has had difficulties with his memory since suffering a head injury the previous year. Plaintiff reported that he reads the same page multiple times because of his memory problems. Mental status examination was unremarkable. (Tr. 570-71.)

On February 22, 2007, plaintiff was seen in Corrections Medicine with complaints of a toothache. Mental status examination was unremarkable. Plaintiff was provided medication for dental caries. (Tr. 568-69.)

On June 18, 2007, plaintiff underwent a consultative psychological evaluation for disability determinations. Plaintiff reported, *inter alia*, that he experienced short term and long term memory loss and, further, that he had been diagnosed with bipolar disorder eight years prior. As to his short term memory loss, plaintiff reported that he has difficulty with names, telephone

numbers, and following television programs and that he has had such difficulty for about six or seven months. Plaintiff reported that he had seen someone for depression prior to his accident, but that he has had no problem with depression since then. Plaintiff reported that he last used alcohol the previous day when he drank three twelve-ounce beers. Plaintiff reported that he currently drank once or twice a week but that he used to drink six to twelve beers daily. Plaintiff reported receiving no current medical treatment and that he was not taking any medication. Mental status examination showed plaintiff to be cooperative and pleasant, with good eye contact and an alert expression. Plaintiff's mood was noted to be euthymic and his affect was full. Plaintiff was noted to be spontaneous, coherent, relevant, and logical. Plaintiff exhibited no deficits with stream of speech and mental activity. No evidence of thought disturbance was noted. Plaintiff was oriented in all spheres. Plaintiff was able to repeat six digits forward and could name the current president and mayor. Plaintiff could not name the current governor. Plaintiff's remote memory was intact. Plaintiff had good expressed verbal judgment and proverb interpretation. Simple calculations were performed without difficulty and serial threes were performed without errors. Plaintiff's insight and judgment were noted to be slightly limited. As to his attention, concentration and memory, plaintiff was administered the Trail Making Test on which he scored in the

moderately impaired range for simple focused attention and scanning ability, and in the mildly impaired range for more complex attention and ability to rapidly shift mental sets. On the Wechsler Memory Scale-III, plaintiff's scores placed him in the low average range of ability. As to his activities of daily living, plaintiff reported that he takes care of household chores, does not drive, and spends his time reading, walking and watching television. Plaintiff reported that he continually has to go back over what he reads. As to social functioning, plaintiff reported getting along adequately with others and reported having no problems. Plaintiff reported being able to care for his personal needs. Dr. L. Lynn Mades opined that plaintiff demonstrated the ability to maintain adequate attention and concentration, with appropriate persistence and pace. Dr. Mades diagnosed plaintiff with alcohol abuse and assigned a Global Assessment of Functioning (GAF) score of 75.[3] Dr. Mades concluded that plaintiff displayed no evidence of mood problems despite his report of depression a couple of years prior. Dr. Mades noted plaintiff's history to be significant for substance abuse with ongoing alcohol use. Dr.

---

[3]A GAF score considers "psychological, social, and occupational functioning on a hypothetical continuum of mental health/illness." Diagnostic and Statistical Manual of Mental Disorders, Text Revision 34 (4th ed. 2000). A GAF score of 71-80 indicates transient symptoms and expectable reactions to psychosocial stressors (e.g., difficulty concentrating after family argument) or no more than slight impairment in social, occupational or school functioning (e.g., temporarily falling behind in schoolwork).

Mades questioned the reliance of plaintiff's reports regarding his alcohol use.  Dr. Mades opined that plaintiff's prognosis was fair with abstinence from alcohol use.  Dr. Mades opined that plaintiff appeared incompetent to manage funds due to questions regarding his current alcohol use.  (Tr. 593-600.)

On July 2, 2007, Aine Kresheck, a psychological consultant with disability determinations, completed a Psychiatric Review Technique Form in which it was opined that plaintiff's cognitive impairment and substance addiction disorder did not constitute severe impairments.  Consultant Kresheck opined that plaintiff experienced mild limitations in his activities of daily living; in maintaining social functioning; and in maintaining concentration, persistence or pace, with no repeated episodes of extended periods of decompensation.  (Tr. 601-12.)

While incarcerated on October 30, 2007, plaintiff was referred for mental health services.  It was noted that plaintiff had previously been diagnosed with bipolar disorder and was not taking any medication.  (Tr. 304.)

On November 7, 2007, Mary Hoatlin, LCSW, with Corrections Medicine, diagnosed plaintiff with alcohol abuse, continuous drinking behavior.  (Tr. 286.)  On that same date, Ms. Hoatlin referred plaintiff for psychiatric consultation given plaintiff's reports of depression and anger and his expressed desire to receive treatment therefor.  Plaintiff reported that he began using alcohol

when he was eighteen years of age and drank a twelve-pack of beer daily. Plaintiff reported that he had never been abstinent from alcohol but had previously attended rehabilitation. Plaintiff reported that he last used alcohol on October 18, 2007, and was using alcohol at the time of his arrest. Plaintiff's mental health problems were noted to include low mood, poor concentration, and history of treatment for depression. (Tr. 301-03.)

On November 28, 2007, plaintiff visited Dr. Anna M. Jurec at Corrections Medicine and reported that he felt depressed, had crying spells, felt hopeless and helpless, had poor energy, had disrupted sleep patterns, and had difficulties concentrating. Plaintiff reported that he had been told previously that he had bipolar disorder. Plaintiff reported that alcohol had been a problem for him and that he had been sober for the past two months. Dr. Jurec noted plaintiff's mood to be depressed and his affect full and congruent. Plaintiff's insight and judgment were noted to be fair. Dr. Jurec diagnosed plaintiff with bipolar disorder and prescribed Zoloft and Lamictal. (Tr. 283-84.)

On December 11, 2007, plaintiff complained of back pain to Corrections Medicine. Plaintiff admitted to alcohol use and reported that he drank six to twelve twelve-ounce beers when he drinks. Mental status examination was unremarkable. Plaintiff was diagnosed with low back pain, elevated blood pressure reading, and alcohol abuse with continuous drinking behavior. Naproxen was

prescribed.  (Tr. 278-80.)

On February 25, 2008, Dr. Fred Rottneck with Corrections Medicine prescribed Zoloft for plaintiff's diagnosed condition of bipolar disorder.  (Tr. 334-35.)

On February 26, 2008, Dr. Alan R. Felthous with Corrections Medicine prescribed Lamictal for plaintiff's diagnosed condition of bipolar disorder.  (Tr. 333.)

On March 13, 2008, Corrections Medicine noted plaintiff's medications to be Lamictal, Zoloft, Piroxicam, and Naproxen. Mental status examination was unremarkable.  Plaintiff was treated for hypertension and dyspnea.  (Tr. 330-32.)

On May 30, 2008, plaintiff visited Dr. Gina McCrary-Smith with complaints of low back pain.  It was noted that plaintiff had recently been released from prison and ran out of his medications. It was noted that plaintiff needed a referral for psychotropic medications.  Tramadol was prescribed.  (Tr. 613-15.)

An intake assessment for Hopewell Center was completed on July 11, 2008, upon referral by plaintiff's disability attorney. It was noted that plaintiff complained of severe depression, mood swings, fluctuating appetite, and interrupted sleep.  Plaintiff reported that he had been diagnosed with bipolar disorder when he was twenty-eight years of age.  (Tr. 638.)  A Medication Profile completed that same date by Lorna Vaughn noted plaintiff's diagnosis to be bipolar disorder, type II, depressed; and

plaintiff's current medications to be Zoloft, Seroquel and Lamictal. Plaintiff's GAF score was 56. (Tr. 624-25.)[4]

Plaintiff underwent a psychiatric evaluation at Hopewell Center on July 14, 2008, and reported that he experienced mood swings, depression, feelings of hopelessness and helplessness, impaired self esteem, lack of motivation, and poor sleep. Plaintiff also reported that he hears voices. Plaintiff reported that he saw a psychiatrist once a month and took Zoloft and Lamictal while he was incarcerated from October 2007 to March 2008 and that such treatment improved his condition dramatically. Plaintiff reported that he no longer drinks since his accident in 2006 but considered himself an alcoholic before the accident. Dr. Vadim Baram noted plaintiff's current medications to include Tramadol and Naproxen. Mental status examination showed plaintiff's mood to be depressed and his affect anxious. Plaintiff's thought content was noted to include paranoid delusions. Plaintiff's insight and judgment were noted to be fair. Dr. Baram diagnosed plaintiff with bipolar affective disorder, type I, depressed, with psychotic features; and history of alcohol abuse. A GAF score of 56 was assigned. Dr. Baram prescribed Zoloft, Lamictal and Seroquel for plaintiff and instructed him to

---

[4]A GAF score of 51 to 60 indicates moderate symptoms (e.g., flat affect and circumstantial speech, occasional panic attacks) or moderate difficulty in social, occupational or school functioning (e.g., few friends, conflicts with peers or co-workers).

participate in psychotherapy.  (Tr. 635-37.)

Plaintiff met with his Hopewell case manager, Lorna Vaughn, on August 15, 2008, who noted plaintiff to be upset about a family matter, but to calm down while talking.  (Tr. 634.)  Dr. Baram determined to increase plaintiff's dosage of Zoloft given plaintiff's report of continued anxiousness.  (Tr. 630.)  On August 18, 2008, plaintiff reported to his case manager that the medication was working because he was spending more time out of his room.  Plaintiff's history of drinking and fighting was noted. (Tr. 633.)  On September 16, 2008, plaintiff reported to his case manager that his medication was working well.  (Tr. 629.)

Plaintiff expressed a lot of anxiety to his case manager on October 14, 2008, but reported that he was taking his medication and remained clean and sober.  Plaintiff reported that he felt good after having celebrated his birthday.  (Tr. 626-27.)

Plaintiff returned to the Hopewell Center on November 6, 2008, and reported that he was having a rough time with anxiety and could not be around people.  Plaintiff also reported that he started to hear voices.  Plaintiff's dosages of Zoloft and Seroquel were increased.  (Tr. 663.)

Plaintiff underwent a consultative evaluation at West Park Medical Clinic on December 8, 2008, for disability determinations.  Plaintiff reported his current medications to include Lamictal, Zoloft and Seroquel as prescribed by the Hopewell

Center.  Plaintiff reported that he suffered from depression, but Dr. John S. Rabun opined that plaintiff's described symptoms suggested psychosis.  Plaintiff reported that he occasionally hears voices and that he believes people are trying to poison him. Plaintiff reported that he preferred to be alone and did not trust anyone.  Plaintiff reported that he previously drank alcohol but that he had been sober for fourteen months.  Dr. Rabun noted plaintiff to have a depressed mood and flat affect, exaggerated startle response, and increased psychomotor activity with rapid speech.  Mental status examination showed plaintiff to be easily distracted and border on agitation.  Plaintiff had difficulty staying on topic.  Plaintiff was noted to have occasional flight of ideas.  Recent and remote memory was normal.  Dr. Rabun opined that plaintiff's intellectual capacity was in the low average range, with preserved insight and judgment.  Dr. Rabun diagnosed plaintiff with schizoaffective disorder–bipolar type and assigned a GAF score of 40.[5]  In conclusion, Dr. Rabun opined that plaintiff would show mild impairments in his capacity to understand, remember and carry out simple instructions; with moderate difficulty understanding, remembering and carrying out complex instructions.  Dr. Rabun noted

---

[5]A GAF score of 31-40 indicates some impairment in reality testing or communication (e.g., speech is at times illogical, obscure, or irrelevant) or major impairment in several areas, such as work or school, family relations, judgment, thinking, or mood (e.g., depressed man avoids friends, neglects family, and is unable to work; child frequently beats up younger children, is defiant at home, and is failing at school).

plaintiff to primarily have difficulty with social contacts, and thus would show marked difficulty interacting appropriately in a social setting and adapting to changes in a work environment. Dr. Rabun opined that plaintiff would have no difficulty managing his own funds. (Tr. 616-23.)

On January 5, 2009, plaintiff reported to Case Manager Vaughn that he was upset over a personal relationship and threatened to begin drinking. Ms. Vaughn reminded plaintiff of recent gains and the jeopardy caused by drinking. (Tr. 664.) On January 8, 2009, plaintiff reported to Ms. Vaughn that he was experiencing double vision and vomiting as side effects of Lamictal. Plaintiff also reported having altered moods. (Tr. 659, 663.)

Plaintiff telephoned Case Manager Vaughn on January 15, 2009, and reported that he was not doing well and was not in control of his emotions. Plaintiff reported that he was hearing voices and that his irritability had increased. Plaintiff also reported that he was "decreasing his drinking to 3 tall beers every other day." Ms. Vaughn suggested that plaintiff seek inpatient treatment for medication adjustment and to dry out. Ms. Vaughn reminded plaintiff that drinking and medication work against each other. (Tr. 658.)

On January 22, 2009, Ms. Vaughn noted that she had received five rambling voice messages from plaintiff in which he

sounded impaired. Upon speaking with plaintiff personally, Ms. Vaughn noted that plaintiff continued to sound impaired and was in despair with emotions running high. Plaintiff was noted to be angry and crying. Ms. Vaughn noted plaintiff's current medications to include Seroquel, Lamictal, Doxepin, Hydrochlorthiazide, Naproxen, Ranitidine, and Tramadol. On January 23, 2009, plaintiff's girlfriend informed Ms. Vaughn that plaintiff had been admitted to St. Mary's and that plaintiff had intoned intent to harm others. (Tr. 641-42, 660-61.)

On February 2, 2009, plaintiff telephoned Ms. Vaughn and informed her that he had been discharged on January 31, 2009. Ms. Vaughn noted plaintiff's speech to be slurred, and plaintiff admitted to drinking despite instructions from doctors that he stop drinking. Plaintiff agreed that alcohol made him feel worse. (Tr. 656-57.) Plaintiff sounded better and was coherent on February 3, 2009. Abstinence from alcohol and consistency with medication compliance were discussed. (Tr. 655.)

Plaintiff visited Ms. Vaughn on February 26, 2009, and discussed goals for sobriety, independent living, and being a better parent and person. (Tr. 652.)

Plaintiff visited Ms. Vaughn on March 2, 2009, for Substance Assessment but was too inebriated to be assessed. (Tr. 652.) Plaintiff reported that he had been drinking since 10:00 a.m. and that he drank nearly a case of beer. Plaintiff admitted

to being an alcoholic and inpatient treatment was discussed.  (Tr. 650-51.)

On March 6, 2009, plaintiff reported to Ms. Vaughn that he had not drank in two days.  On March 9, 2009, plaintiff reported that he continued to be sober, was back on his medication and felt better.  (Tr. 648-49.)

On April 17, 2009, plaintiff failed to appear for a scheduled appointment at the Hopewell Center.  (Tr. 647.)  Upon being contacted, plaintiff admitted to Ms. Vaughn that he had been drinking and that he was physically sick as a result.  Plaintiff reported that he takes his medication when he is not drinking. Plaintiff advised Ms. Vaughn on April 30, 2009, that he admitted himself to DePaul Health Center for detoxification.  (Tr. 645.)

On June 1, 2009, plaintiff telephoned Ms. Vaughn to advise that he had been readmitted to the hospital for detoxification.  Plaintiff reported that he had been drinking beer heavily.  On June 11, 2009, Ms. Vaughn noted plaintiff to continue his inpatient treatment, and that plaintiff had received three ECT treatments.  (Tr. 646.)

On August 31, 2009, plaintiff reported to Ms. Vaughn that he was currently receiving weekly ECT treatments and visited his doctor monthly.  Ms. Vaughn noted plaintiff to be clear, coherent and oriented.  (Tr. 644.)

In response to an interrogatory submitted by the ALJ,

licensed psychologist Karyn B. Perry opined on February 3, 2010, that, "given the claimant's continued use of alcohol and the need for detoxification/treatment services on multiple occasions, the original testimony is being amended to recommend that alcohol is material in this case." (Tr. 677-78.)

## IV. The ALJ's Decision

The ALJ determined that plaintiff met the insured status requirements of the Social Security Act through December 31, 2006. The ALJ found that plaintiff had not engaged in substantial gainful activity since February 26, 2006, the alleged onset date of disability. The ALJ determined plaintiff's degenerative disc disease, alcohol and drug dependence, bipolar disorder, and late effects of head trauma to constitute severe impairments, but that such impairments, either singly or in combination, did not meet or medically equal any listed impairment in 20 C.F.R, Part 404, Subpart P, App. 1. The ALJ determined that plaintiff's impairments, including his substance abuse disorder, resulted in an RFC that permitted plaintiff to perform light work, but with limitations that plaintiff could engage in only occasional stooping, kneeling, crouching, or crawling; that plaintiff could perform only simple, repetitive work; and that plaintiff could have only occasional contact with co-workers, supervisors and the general public. The ALJ concluded that plaintiff could not perform his past relevant work or any other work as it existed in the

national economy in significant numbers. (Tr. 10-17.) The ALJ further determined, however, that if plaintiff stopped his substance abuse, he would have the RFC to perform light work "except that the claimant could only occasionally stoop, kneel, crouch or crawl. He could have more than occasional contact with co-workers, supervisors and the general public." (Tr. 18.) The ALJ determined that, if plaintiff stopped his substance abuse, he could not perform his past relevant work but had the RFC to perform other work as it exists in significant numbers in the national economy, and specifically housekeeper and master-semiconductor. The ALJ thus determined that, because plaintiff would not be disabled if he stopped his substance abuse, plaintiff's substance abuse disorder was a contributing factor material to a finding of disability. In light of plaintiff's substance abuse being a contributing factor, the ALJ found that plaintiff could not be considered disabled and thus was not under a disability since the alleged onset date through the date of the decision. (Tr. 19-22.)

## V. Discussion

To be eligible for Social Security Disability Insurance Benefits and Supplemental Security Income under the Social Security Act, plaintiff must prove that he is disabled. <u>Pearsall v. Massanari</u>, 274 F.3d 1211, 1217 (8th Cir. 2001); <u>Baker v. Secretary of Health & Human Servs.</u>, 955 F.2d 552, 555 (8th Cir. 1992). The Social Security Act defines disability as the "inability to engage

in any substantial gainful activity by reason of any medically determinable physical or mental impairment which can be expected to result in death or which has lasted or can be expected to last for a continuous period of not less than 12 months." 42 U.S.C. §§ 423(d)(1)(A), 1382c(a)(3)(A). An individual will be declared disabled "only if his physical or mental impairment or impairments are of such severity that he is not only unable to do his previous work but cannot, considering his age, education, and work experience, engage in any other kind of substantial gainful work which exists in the national economy." 42 U.S.C. §§ 423(d)(2)(A), 1382c(a)(3)(B).

To determine whether a claimant is disabled, the Commissioner engages in a five-step evaluation process. See 20 C.F.R. §§ 404.1520, 416.920; Bowen v. Yuckert, 482 U.S. 137, 140-42 (1987). The Commissioner begins by deciding whether the claimant is engaged in substantial gainful activity. If the claimant is working, disability benefits are denied. Next, the Commissioner decides whether the claimant has a "severe" impairment or combination of impairments, meaning that which significantly limits his ability to do basic work activities. If the claimant's impairment(s) is not severe, then he is not disabled. The Commissioner then determines whether claimant's impairment(s) meets or equals one of the impairments listed in 20 C.F.R., Subpart P, Appendix 1. If claimant's impairment(s) is equivalent to one of

the listed impairments, he is conclusively disabled.  At the fourth step, the Commissioner determines the claimant's RFC and determines whether the claimant can perform his past relevant work.  If so, the claimant is not disabled.  If the Commissioner finds that the claimant cannot do his past relevant work, the Commissioner then proceeds to the fifth step of the evaluation process whereby he considers the claimant's RFC, together with the claimant's vocational factors (age, education and work experience), and determines if the claimant can make an adjustment to other work. If the claimant can make such an adjustment, the claimant is found not to be disabled.  If the Commissioner finds the claimant unable to perform such other work, the claimant is determined to be disabled and becomes entitled to disability benefits.

In 1996, Congress eliminated alcoholism as a basis for obtaining social security benefits.  See Kluesner v. Astrue, 607 F.3d 533, 537 (8th Cir. 2010).  "An individual shall not be considered disabled for purposes of this title if alcoholism or drug addiction would (but for this subparagraph) be a contributing factor material to the Commissioner's determination that the individual is disabled."  42 U.S.C. §§ 423(d)(2)(C), 1382c(a)(3)(J).  In such cases, the ALJ must first determine if the claimant's symptoms, regardless of cause, constitute disability. Kluesner, 607 F.3d at 537; 20 C.F.R. §§ 404.1535(a), 416.935(a). If the ALJ finds a disability and evidence of substance abuse, the

next step is to determine whether the disability would exist in the absence of the substance abuse. Kluesner, 607 F.3d at 537. When a claimant is currently engaged in substance abuse, the ALJ's inquiry is necessarily hypothetical and thus more difficult than if the claimant had stopped. Id.

The claimant has the burden to prove that his substance abuse is not a contributing factor. Kluesner, 607 F.3d at 537; Estes v. Barnhart, 275 F.3d 722, 725 (8th Cir. 2002).

In the instant cause, the ALJ first determined that plaintiff's symptoms and resulting RFC, based on all of his impairments including substance abuse, precluded plaintiff from performing any work that exists in significant numbers in the national economy, and thus that plaintiff would be disabled. (Tr. 16-17.) The ALJ then determined that if plaintiff stopped the substance abuse, plaintiff's remaining symptoms and resulting RFC would not preclude such work. The ALJ thus determined that, without the substance abuse, plaintiff would not be under a disability. Plaintiff's claims for benefits were therefore denied. (Tr. 21-22.) Plaintiff challenges this determination.

The decision of the Commissioner must be affirmed if it is supported by substantial evidence on the record as a whole. 42 U.S.C. § 405(g); Richardson v. Perales, 402 U.S. 389, 401 (1971); Estes v. Barnhart, 275 F.3d 722, 724 (8th Cir. 2002). Substantial evidence is less than a preponderance but enough that a reasonable

person would find it adequate to support the conclusion. <u>Johnson</u> <u>v. Apfel</u>, 240 F.3d 1145, 1147 (8th Cir. 2001). This "substantial evidence test," however, is "more than a mere search of the record for evidence supporting the Commissioner's findings." <u>Coleman v.</u> <u>Astrue</u>, 498 F.3d 767, 770 (8th Cir. 2007) (internal quotation marks and citation omitted). "Substantial evidence on the record as a whole . . . requires a more scrutinizing analysis." <u>Id.</u> (internal quotation marks and citations omitted).

To determine whether the Commissioner's decision is supported by substantial evidence on the record as a whole, the Court must review the entire administrative record and consider:

1. The credibility findings made by the ALJ.

2. The plaintiff's vocational factors.

3. The medical evidence from treating and consulting physicians.

4. The plaintiff's subjective complaints relating to exertional and non-exertional activities and impairments.

5. Any corroboration by third parties of the plaintiff's impairments.

6. The testimony of vocational experts when required which is based upon a proper hypothetical question which sets forth the claimant's impairment.

<u>Stewart v. Secretary of Health & Human Servs.</u>, 957 F.2d 581, 585-86 (8th Cir. 1992) (quoting <u>Cruse v. Bowen</u>, 867 F.2d 1183, 1184-85 (8th Cir. 1989)).

The Court must also consider any evidence which fairly detracts

from the Commissioner's decision. Coleman, 498 F.3d at 770; Warburton v. Apfel, 188 F.3d 1047, 1050 (8th Cir. 1999). However, even though two inconsistent conclusions may be drawn from the evidence, the Commissioner's findings may still be supported by substantial evidence on the record as a whole. Pearsall, 274 F.3d at 1217 (citing Young v. Apfel, 221 F.3d 1065, 1068 (8th Cir. 2000)). "[I]f there is substantial evidence on the record as a whole, we must affirm the administrative decision, even if the record could also have supported an opposite decision." Weikert v. Sullivan, 977 F.2d 1249, 1252 (8th Cir. 1992) (internal quotation marks and citation omitted); see also Jones ex rel. Morris v. Barnhart, 315 F.3d 974, 977 (8th Cir. 2003).

Because the ALJ committed no legal error and the decision is supported by substantial evidence on the record as a whole, the decision of the Commissioner finding plaintiff not to be disabled must be affirmed.

A.    Credibility Determination

When determining a claimant's RFC, the ALJ must first evaluate the credibility of the claimant's subjective complaints. Nishke v. Astrue, 878 F. Supp. 2d 958, 978 (E.D. Mo. 2012). When undergoing such evaluation, the ALJ must consider all evidence relating to the complaints, including the claimant's prior work record and third party observations as to the claimant's daily activities; the duration, frequency and intensity of the symptoms;

any precipitating and aggravating factors; the dosage, effectiveness and side effects of medication; and any functional restrictions. <u>Polaski v. Heckler</u>, 739 F.2d 1320, 1322 (8th Cir. 1984 (subsequent history omitted). Although the ALJ may not discount subjective complaints on the sole basis of personal observation, he may disbelieve a claimant's complaints if there are inconsistencies in the evidence as a whole. <u>Id.</u> The "crucial question" is not whether the claimant experiences symptoms, but whether his credible complaints prevent him from performing work. <u>Gregg v. Barnhart</u>, 354 F.3d 710, 713-14 (8th Cir. 2003).

The plaintiff here contends that the ALJ improperly determined plaintiff's complaints not to be credible by merely making a summary determination and by failing to analyze the factors required to be considered in making a credibility determination. When a plaintiff makes such a challenge, "the duty of the court is to ascertain whether the ALJ considered all of the evidence relevant to the plaintiff's complaints . . . under the <u>Polaski</u> standards and whether the evidence so contradicts the plaintiff's subjective complaints that the ALJ could discount his or her testimony as not credible." <u>Masterson v. Barnhart</u>, 363 F.3d 731, 738-39 (8th Cir. 2004). It is not enough that the record merely contain inconsistencies. Instead, the ALJ must specifically demonstrate in his decision that he considered all of the evidence. <u>Id.</u> at 738; <u>see also</u> <u>Cline v. Sullivan</u>, 939 F.2d 560, 565 (8th Cir.

1991).  Where an ALJ explicitly considers the Polaski factors but
then discredits a claimant's complaints for good reason, the
decision should be upheld.  Hogan v. Apfel, 239 F.3d 958, 962 (8th
Cir. 2001); see also Casey v. Astrue, 503 F.3d 687, 696 (8th Cir.
2007).  The determination of a claimant's credibility is for the
Commissioner, and not the Court, to make.  Tellez v. Barnhart, 403
F.3d 953, 957 (8th Cir. 2005); Pearsall, 274 F.3d at 1218.

Plaintiff's claim that the ALJ made a summary
determination as to his credibility and failed to consider the
Polaski factors is without merit.  A review of the ALJ's decision
shows the ALJ to have discussed the required factors — including
daily activities, the effectiveness of treatment and medication,
precipitating and aggravating factors, functional restrictions, and
the pattern of plaintiff's symptoms — and to have set out
inconsistencies in the record to support his conclusion that
plaintiff's subjective complaints were not credible.  First, the
ALJ noted that despite plaintiff's testimony that he had not
consumed alcohol since approximately June 2007, the record was
replete with evidence that plaintiff continued to engage in alcohol
abuse, including evidence showing plaintiff to have had three
detoxification admissions since January 2009 and to have appeared
at Hopewell for an assessment in March 2009 too inebriated to
participate.  The ALJ also noted that symptoms of plaintiff's
mental impairments appeared to be controlled during his

incarceration when he received regular treatment and abstained from alcohol, and that psychiatric symptoms reappeared when his treatment ceased after being released from prison. See Renstrom v. Astrue, 680 F.3d 1057, 1066-67 (8th Cir. 2012) (impairment cannot be considered disabling if it can be controlled with medication); Schultz v. Astrue, 479 F.3d 979, 983 (8th Cir. 2007) (same). In addition, the undersigned notes that, despite being advised repeatedly by his case manager to consistently take his medication and abstain from alcohol, plaintiff did not do so and instead engaged in drinking behaviors which worsened the effects of his mental impairments. See Wildman v. Astrue, 596 F.3d 959, 968 (8th Cir. 2010) (noncompliance with doctor's instruction to take medication and abstain from drugs and alcohol constitutes a valid reason to discredit subjective complaints). These reasons for discrediting plaintiff's subjective complaints are supported by substantial evidence on the record as a whole.

A review of the ALJ's decision shows that, in a manner consistent with and as required by Polaski, the ALJ considered plaintiff's subjective complaints on the basis of the entire record and set out inconsistencies that detracted from plaintiff's credibility. Because the ALJ's determination not to credit plaintiff's subjective complaints is supported by good reasons and substantial evidence, this Court must defer to the ALJ's credibility determination. Renstrom, 680 F.3d at 1067.

B.    Determination of Plaintiff's RFC

Plaintiff claims that the ALJ erred in determining plaintiff's RFC inasmuch as the ALJ failed to include additional limitations caused by plaintiff's mental impairments, including his inability to be around people. Plaintiff also argues that the ALJ reached improper conclusions regarding the effects of plaintiff's substance abuse without support in the record. Upon review of plaintiff's claims, the undersigned finds the ALJ's RFC determination to be supported by substantial evidence on the record as a whole.

A claimant's RFC is what a claimant remains able to do despite his limitations. 29 C.F.R. §§ 404.1545, 416.945; Dunahoo v. Apfel, 241 F.3d 1033, 1039 (8th Cir. 2001). The ALJ bears the primary responsibility for assessing a claimant's RFC based on all relevant evidence, including medical records, the observations of treating physicians and others, and the claimant's description of his limitations. Krogmeier v. Barnhart, 294 F.3d 1019, 1024 (8th Cir. 2002); Hutsell v. Massanari, 259 F.3d 707, 711 (8th Cir. 2001); Dunahoo, 241 F.3d at 1039 (citing Anderson v. Shalala, 51 F.3d 777, 779 (8th Cir. 1995)); see also 20 C.F.R. §§ 404.1545(a), 416.945(a)).

Plaintiff claims that the ALJ's RFC determination here failed to account for plaintiff's marked impairments in social interaction and that the medical evidence shows plaintiff to have

experienced such severe limitations even when he refrained from alcohol.  For the following reasons, plaintiff's claim is without merit.

A review of the record in its entirety shows plaintiff to have complained of and suffered from memory deficit subsequent to the February 2006 accident.  Records from plaintiff's incarceration in December 2006 and January and February 2007 show plaintiff's mental status examinations to have been unremarkable and that plaintiff's mental health complaints consisted only of memory problems.  In June 2007, plaintiff reported to consulting physician Dr. Mades that he had had no problems with depression since his February 2006 accident, that he got along adequately with others, and had no problems with social functioning.  Indeed, Dr. Mades noted plaintiff to be cooperative, pleasant, euthymic, and to display no evidence of mood problems.  While plaintiff was incarcerated in November 2007, he reported symptoms of depression for which he was provided psychotropic medication.  Upon being treated with such medication, plaintiff no longer complained of his depressive symptoms, and mental status examinations were consistently unremarkable.  Indeed, plaintiff himself reported that the treatment he received in prison improved his condition dramatically.  Upon ceasing his medication after being released from prison, plaintiff again complained of depressive symptoms for which he was prescribed psychotropic medication by the Hopewell

Center.  Plaintiff subsequently reported that the medication worked well, that he was spending more time out of his room, and that he felt good after his birthday.  It was not until November 2008 when plaintiff reported that he could not be around people, and in December 2008 when he reported a preference to be alone.  During this December 2008 consultative examination, Dr. Rabun noted plaintiff's primary difficulty to be with social contacts and opined that plaintiff had marked difficulty interacting socially. As noted by the ALJ, however, a review of the record as a whole shows that plaintiff was again on the path of abusing alcohol at the time of this consultative examination.  Indeed, plaintiff informed his case manager the following month that he planned to "decrease[] his drinking[.]"  (Tr. 658.)  Thereafter, the record shows plaintiff's continual use of alcohol with few, if any, documented periods of abstinence.  On this record, it cannot be said that in the absence of alcohol abuse, plaintiff nevertheless continued to experience such significant social limitations caused by his mental impairment such that his mental RFC was more adversely affected thereby.

It is the duty of the Commissioner to resolve conflicts in the evidence, including conflicts in medical evidence.  See Renstrom, 680 F.3d at 1065; Spradling v. Chater, 126 F.3d 1072, 1075 (8th Cir. 1997); Bentley v. Shalala, 52 F.3d 784, 787 (8th Cir. 1995).  Because substantial evidence on the record as a whole

supports the ALJ's finding that plaintiff did not exhibit significant psychiatric limitations while abstaining from alcohol and while taking medication as prescribed, the ALJ did not err in failing to include in his RFC determination a finding consistent with marked mental limitations, including marked limitations in social functioning. Where substantial evidence supports the Commissioner's decision, the decision may not be reversed merely because substantial evidence may support a different outcome. Briggs v. Callahan, 139 F.3d 606, 608 (8th Cir. 1998); Browning v. Sullivan, 958 F.2d 817, 821 (8th Cir. 1992) (citing Cruse v. Bowen, 867 F.2d 1183, 1184 (8th Cir. 1989)).

For these same reasons, plaintiff's claim that the record fails to support the ALJ's conclusions regarding the effects of plaintiff's substance abuse is without merit. As discussed above, the record is replete with evidence that during his periods of abstinence, plaintiff exhibited no significant psychiatric limitations, was compliant with his medications, and obtained the beneficial effects of his medications. The record further shows that plaintiff's alcohol abuse coincided with an exacerbation of mental health symptoms, including depressive symptoms, auditory hallucinations, paranoid delusions, and threatening behavior. In light of this conclusive evidence of plaintiff's alcohol abuse during the relevant period and that such alcohol abuse exacerbated the symptoms of plaintiff's mental impairment, substantial evidence

on the record as a whole supports the ALJ's finding that plaintiff's substance abuse was a contributing factor material to plaintiff's disability during the relevant period. <u>Kluesner</u>, 607 F.3d at 537-38. On this record, plaintiff has failed to meet his burden that his substance abuse was not a contributing factor.

## VI. Conclusion

For the reasons set out above on the claims raised by plaintiff on this appeal, the ALJ's determination is supported by substantial evidence on the record as a whole and plaintiff's claims of error should be denied. Where substantial evidence supports the Commissioner's decision, this Court may not reverse the decision merely because substantial evidence may exist in the record that would have supported a contrary outcome or because another court could have decided the case differently. <u>Gowell v. Apfel</u>, 242 F.3d 793, 796 (8th Cir. 2001); <u>Browning</u>, 958 F.2d at 821; <u>see also</u> <u>Flynn v. Astrue</u>, 513 F.3d 788, 795 (8th Cir. 2008). Accordingly, the decision of the Commissioner denying plaintiff's claims for benefits should be affirmed.

Therefore,

**IT IS HEREBY ORDERED** that Acting Commissioner of Social Security Carolyn W. Colvin is substituted for former Commissioner Michael J. Astrue as defendant in this cause.

**IT IS FURTHER ORDERED** that that the decision of the Commissioner is **AFFIRMED** and plaintiff's Complaint is dismissed

with prejudice.

Judgment shall be entered accordingly.


_____
UNITED STATES MAGISTRATE JUDGE



Dated this _10th_ day of September, 2013.